## MOORE v. LEHIGH VALLEY R. CO. et al.

District Court, S. D. New York.

Nov. 25, 1946.

Nathan Baker, of Hoboken, N. J., for plaintiff.

Alexander & Green, of New York City (William R. McDermott, of New York City, of counsel), for defendant Lehigh Valley R. Co.

John P. Smith, of New York City, for defendant, Moore-McCormack Lines, Inc.

KNOX, District Judge.

Plaintiff's submersion in the icy water of the North River on the night of February 16, 1944 was, I dare say, a harrowing experience. His fright and terror at what might well have been the result of the accident, together with the shock and suffering he underwent during the fifteen or twenty minutes he was in the stream, and immediately thereafter, must have been acute. Fortunately, however, plaintiff's bodily injuries were of a minor nature, and he was incapacitated for a relatively short time. He returned to work early in March, 1944.

From that time on, he continued his labors intermittently, being away from duty over the next few months for a total, it is said, of 80 days. This loss of time, plaintiff claims, was due to spells of "shakes" and dizziness that came upon him in the weeks immediately following the accident.

Furthermore, plaintiff says that, even now, he occasionally suffers from attacks of nervousness and that, as a consequence to a shoulder injury sustained when he fell into the water, he has some limitation in the movement of one of his arms.

The proof that these last mentioned ailments are due to the accident is not convincing. In this connection, it is to be remembered that plaintiff is a longshoreman who has long followed his calling, and that he has now reached the age of 65 years. It is quite probable, therefore, that arthritis, sclerosis, and other natural processes of age, in part at least, are responsible for the infirmities of which plaintiff presently complains. They should not, accordingly, be taken too seriously in the assessment of plaintiff's damages. In my opinion, the jury gave undue weight to his recital of his suffering. Otherwise, it could not properly have concluded, under the other facts of the case, that plaintiff was damaged to the extent of $3,000.

Plaintiff's wages, it appears, varied from week to week. In the last half of 1943, his total earnings were $770.11, or about $29.60 per week. In 1944, his quarterly earnings were as follows:

| | | |
|---|---|---|
| First quarter | $271.76 | (the period wherein he was injured) |
| Second quarter | 134.37 | |
| Third quarter | 25.93 | |
| Fourth quarter | 635.39 | |
| | $1067.45 | |

In 1945, plaintiff's wages aggregated $2166.39, or an average of $41.66 per week. If, therefore, in the second and third quarters of 1944 his income, due to his accident, was reduced—as would appear—his loss, based on his weekly wages of 1945, would be about $480. If plaintiff's loss is to be calculated on the basis of his earnings in the last quarter of 1944, his average weekly income would be about $49 per week. Assuming that he lost 80 days work in the first and second quarters of 1944, his monetary loss was approximately $564.

In view of the foregoing, it would appear that the jury's verdict of $3,000 is somewhat excessive. While, as I have

said, plaintiff's experience was terrifying, I doubt if, under all the circumstances he is entitled to receive approximately $2500 for his pain and suffering. He was in the water for not more than twenty minutes, and his subsequent hospitalization was limited to four days. I think, therefore, that his compensation for pain and suffering should not exceed $1500.

For these reasons, I shall set aside the verdict of the jury and award defendant a new trial, unless plaintiff consents that judgment against the defendant be entered for the sum of $2,000.